THOMAS SWOBE, APPELLEE, V. NEW OMAHA THOMSON-HOUSTON ELECTRIC LIGHT COMPANY, APPELLANT.

FILED MARCH 6, 1894. NO. 5546.

1. **Partnership:** RETIREMENT OF MEMBER OF FIRM: EFFECT ON CONTRACTS. The mere fact that a member of a copartnership firm retires therefrom does not release from the obligations of its contract a corporation which had theretofore engaged to furnish

electric lights for the use of a hotel of which, first, the aforesaid firm, and later its successor, a member of said firm, was proprietor, there being no showing of a release of either member of said firm from its contract liabilities, nor that, under said contract, duties were incumbent on said firm implying a special personal confidence in the member retiring therefrom.

2. **Contracts:** RESCISSION. A party who has required payment of sums of money which by a rescission of the contract will be rendered useless to the other contracting party cannot rescind such contract for the mere non-performance of some condition thereof, unless such right of rescission is reserved by the express terms of the contract itself.

APPEAL from the district court of Douglas county. Heard below before HOPEWELL, J.

*Charles Offutt,* for appellant:

The contract was not assignable so as to enable the assignee to require the continuation of the service without the consent of the defendant, and the attempted assignment authorized the defendant to treat the contract as at an end. (*Robson v. Drummond,* 2 Barn. & Ad. [Eng.], 303; Pomeroy, Remedies & Remedial Rights, secs. 146, 152; *Humble v. Hunter,* 12 Q. B. [Eng.], 310*; *Winchester v. Howard,* 97 Mass.; 303; *Boston Ice Co. v. Potter,* 123 Mass., 28; *Lansden v. McCarthy,* 45 Mo., 106; Pollock, Contracts [4th ed.], 425; *Arkansas Smelting Co. v. Belden,* 127 U. S., 387; *Dickinson v. Calahan,* 19 Pa. St., 233; *Rapplye v. Racine Seeder Co.,* 44 N. W. Rep. [Ia.], 363; *Tasker v. Shepherd,* 6 Hurl. & N. [Eng.], 575; *Leahy v. Dugdale,* 27 Mo., 439.)

The contract between the electric light company and the firm of Markel & Swobe was terminated absolutely at the dissolution of the latter. Neither the electric light company nor the retiring partner is longer bound thereby. The service to be rendered was the performance of all work of a certain class. It was, moreover, such as could be discontinued at any time without impairing the value of that

already rendered. (2 Bates, Partnership, sec. 708; *Caldwell v. Stileman*, 1 Rawle [Pa.] 212.)

The general nature of the contract is such as to make it unenforceable after dissolution. (*McCord v. West Feliciana R. Co.*, 3 La. Ann., 285; *Oliver v. Forrester*, 96 Ill., 315; *National Bank v. Hall*, 101 U. S., 43; *Tasker v. Shepherd*, 6 Hurl. & N. [Eng.], 575; *Johnson v. Wilcox*, 25 Ind., 182; *Schlater v. Winpenny*, 75 Pa. St., 321; *Johnson v. Hartshorne*, 52 N. Y., 173; *Doe v. Miles*, 1 Starkie [Eng.], 181; *Doe v. Bluck*, 8 C. & P. [Eng.], 464; *In re Beck's Estate*, 24 Pac. Rep. [Ore.], 1038; *Griffiths v. Griffiths*, 2 Hare [Eng.], 588.)

The specific terms of the contract clearly import that it was contingent, and that the parties had in mind its possible, if not probable, discontinuance before the end of the five years. (*Lochrane v. Stewart*, 2 S. W. Rep. [Ky.], 903.)

The defendant had a right to cancel the contract for non-payment of the monthly rentals. (*Withers v. Reynolds*, 2 Barn. & Ad. [Eng.], 882; *State v. Davis*, 20 Atl. Rep. [N. J.], 1080; *Hoare v. Rennie*, 5 Hurl. & N. [Eng.], 19; *Reybold v. Voorhees*, 30 Pa. St., 120.)

In no event did the plaintiff, or, indeed, either one of the partners, have the right to enforce the contract after the dissolution of the firm. (*Thomson v. McDonald*, 10 S. E. Rep. [Ga.], 448; *Tasker v. Shepherd*, 6 Hurl. & N. [Eng.], 575.)

*Edward W. Simeral, contra:*

The action was properly brought by Swobe alone. (*West v. Citizens Ins. Co.*, 27 O. St., 1; *Viles v. Bangs*, 36 Wis., 131.)

The contract was assignable. (*La Rue v. Groezinger*, 84 Cal., 281; *Arkansas Valley Smelting Co. v. Belden Mining Co.*, 127 U. S., 379; *West v. Citizens Ins. Co.*, 27 O. St., 1; *British Waggon Co. v. Lea*, 5 L. R., Q. B. D. [Eng.], 149.)

Swobe succeeded to all the rights of the firm, because he

was one of the parties with whom the contract was made, and by the assignment no new party or stranger was brought in. (*Ayres v. Chicago, R. I. & P. R. Co.*, 52 Ia., 478; *Dickson v. Indianapolis Cotton Mfg. Co.*, 63 Ind., 9; *Davis v. Lowell*, 77 Ala., 262.)

RYAN, C.

The appellee filed his petition in the district court of Douglas county, alleging that he was the successor of the firm of Markel & Swobe, and that he had become such successor by virtue of his partner, Markel, having on April 4, 1891, sold and transferred to him his interest in.the firm of Markel & Swobe, including his rights and interest in the contract with the appellant; that the appellant was a corporation whose business consisted in furnishing electric lights; that said appellant contracted to furnish the firm of Markel & Swobe with electric lights for the Millard Hotel in pursuance of a written contract between said parties, for which payments were to be made as therein stipulated; that said hotel had been doing a large business as such and was constantly using the lights furnished by the appellant under the contract aforesaid in lighting its rooms, and had no other means of sufficiently lighting the same; that notwithstanding the requirements of said written contract the appellant had failed to furnish with good and sufficient light the said hotel, and in the connection last referred to, the appellee attached an itemized statement showing at what times and for how long at each time there had been a failure to furnish light as required by the contract, whereby, as the appellee alleged, he had been compelled to use gas during the several aforesaid failures of the appellant to furnish electric light, and that the gas so used had cost appellee $1,624.72, as shown by the said itemized statement; that appellee had repeatedly notified appellant of the unsatisfactory supply and quality of the light furnished. The appellee in his petition alleged that he was ready and willing,

and had been at all times, to comply with each of the terms of the contract referred to, but excused his literal compliance with all of its terms by alleging the above matters and others which are fully stated in the finding of the court hereinafter referred to, and which need not be set out at this time. The appellee tendered the amount which he conceded to be justly due when the aforesaid matters were given proper consideration. He further stated that on April 23, 1891, the appellant had caused to be served upon him a notice, of which a copy will hereinafter be set out at length, and the appellee averred that the appellant, unless restrained, will shut off the light in the aforesaid hotel, to the great and irreparable injury of the appellee, for which the appellee has no just and adequate remedy at law. The prayer of the petition was that the appellant, its servants, employes, and agents, should be enjoined from shutting off said light from said hotel, or from in any way interfering with the same, and for general equitable relief.

The answer alleged the dissolution of the firm of Markel & Swobe and its non-existence since April 1, 1891; that said firm during its existence had operated and run the Millard Hotel, but that since the dissolution of said firm the appellee had been running and operating said hotel, and that in said respects, and no other, the appellee was the successor of the firm of Markel & Swobe, the said Markel, a member of said firm, having on April 1, 1891, sold and transferred all his right and interest in said firm to appellee Swobe. The appellant in its answer admitted that notice had been, on its behalf, served upon the appellee; admitted that appellee had refused to pay what was due from him to appellant, but denied that such refusal was because of the failure by appellant to furnish light as required by the terms of its contract. The appellant, further answering, admitted that unless enjoined or restrained by the court it would shut off said electric light from said hotel, as it had a clear right to do, but denied that the shutting off of said

light would be a great and irreparable injury to appellee for which there would be no remedy at law. The allegations of the petition not admitted as above noted were denied by the answer separately and with great particularity. The answer alleged affirmatively that Markel, who had been a member of the firm of Markel & Swobe, was a man of large wealth and financial credit which was one of the considerations influencing appellant to make the written contract which he did with Markel & Swobe; that from the time the said lighting began, the firm of Markel & Swobe had been unreasonable and unfair in their demands as to light, and had refused to make payments therefor as agreed; that on March 1, 1891, there was due appellant from said firm the sum of $2,625; that on account of the captious and unreasonable complaints of said firm it was agreed between said firm and appellant that the amount to be paid up to March 1, 1891, should be $2,073.50, of which there was then paid $573.50, leaving due appellant the sum of $1,500, which sum the aforesaid firm had failed and refused to pay, and that afterwards appellant presented its bill for furnishing light for March, 1891, of $375, which also, as well as said $1,500, the said firm refused to pay; that thereupon appellant served the notice, referred to in the petition and answer, upon the appellee for the sufficient reasons, as advised by counsel, that appellant was not under obligations longer to furnish light under the aforesaid contract, and could not look to said firm for pay in the future, and because of the failure to pay what was already due appellant at the time of filing its said answer, which payment it was thereby insisted should be made and was an indispensable condition precedent necessary to be complied with before appellee was or could be entitled to any relief whatever.

The contract referred to in the answer and petition was in the following language:

"This agreement, made in duplicate and entered into this

first day of January, 1890, by and between the New Omaha Thomson-Houston Electric Light Company and J. E. Markel and Thomas Swobe, proprietors of the Millard Hotel, witnesseth: That the said electric light company agrees to sufficiently light said hotel for said Markel & Swobe with five (5) arc and five hundred and thirty-seven (537) sixteen (16) candle power lamps, in a complete and satisfactory manner, for which lighting said Markel & Swobe agree to pay said electric light company the sum of three hundred and seventy-five (375) dollars per month as rent therefor, the same to be paid at the end of each and every month; and the said electric light company hereby guaranties that said five (5) arc and five hundred and thirty-seven (537) lamps will sufficiently light said hotel, but in case said hotel is not sufficiently lighted with said number of lights, then and in that case said electric light company shall furnish additional lights of sixteen (16) candle power, without additional cost to said Markel & Swobe.

"Said Markel & Swobe also agree to the following additional terms: Said electric light company is to furnish and provide all fixtures, work, etc., insulating joints, shell and casing, also concealed work in rooms with decorated ceilings which will not admit of cleated work, for which said Markel & Swobe are to pay in cash, when completed, the sum of three hundred and fifty (350) dollars, and also the sum of five hundred eighty-five (585) dollars for plain work and labor, to be paid as follows, to-wit: If the lights are discontinued at the end of the first year, the sum of $468, or $\frac{1}{5}$ off; at the end of the second year, $351, or $\frac{2}{5}$ off; at the end of the third year, $234, or $\frac{3}{5}$ off; at the end of the fourth year, $117, or $\frac{4}{5}$ off; and at the end of the fifth year said Markel & Swobe shall pay nothing. Said Markel & Swobe agree that they will use the lights only when required, the same as gas has been used heretofore in same premises, said lights to be ready for use at all times, day and night.

"In witness whereof, we have hereunto set our names this first day of February, 1890, at Omaha, Nebraska.

"MARKEL & SWOBE.

"THE NEW OMAHA THOMSON-HOUSTON
ELECTRIC LIGHT CO.,

"By S. L. WILEY, *Pres't.* •

"In presence of

"J. W. SNOWDEN.

"Attest:

"FRANK WARREN, *Secretary.*"

The notice served by appellant upon appellee was in the following terms:

"OMAHA, NEBRASKA, April 22, 1891.

"*Messrs. Markel & Swobe, Omaha, Nebraska*—DEAR SIRS: That there may be no misunderstanding as to the import of my interview with Mr. Thomas Swobe in my office this P. M., I beg to express herein again the position of the New Omaha Thomson-Houston Electric Light Company; relative to the contract between you and that company for lighting the Millard Hotel in Omaha, Neb., of date February 1, 1890. The New Omaha Thomson-Houston Electric Light Company hereby notifies you that it declares said contract at an end and cancels the same, to take effect on and after May 1, 1891, for the reasons as follows, to-wit: 1. By the terms of said contract it continues only from month to month at the option of either party, and the electric light company now asserts the right to, and does hereby, exercise that option. 2. The firm of Markel & Swobe has been dissolved and is no longer in existence. This contract was made with that firm on the faith of its joint personal credit and financial responsibility. By the dissolution of the firm the contract was assigned, and this without the consent or acquiescence of the electric light company. It hereby, as it has before by word of mouth, refuses to continue the contract with one member of the former firm, or with any assignee of or purchaser

42

from said firm.   3. The monthly rental stipulated in the contract, to-wit, $375, and the price agreed to be paid, to-wit, $350, for the concealed wiring, has long been in default and remained unpaid, contrary to the express obligation of Markel & Swobe in said contract.   The electric light company will continue to furnish the light to and including the 30th of April, 1891, solely for the purpose of completing a full month and to enable you to make such other arrangements as you may deem proper to meet your needs.   In compliance with the obligation which the company owes to supply lights to all the public on like terms and for the same price, it hereby notifies you that on and after the first day of May, 1891, it will furnish you with all the lights you may require at its regular list and schedule prices to all other customers, payable at the end of each and every month, and it will be pleased to furnish you at once with a tariff rate on application at its offices in this city.   Yours truly,

"New Omaha Thomson-Houston
Electric Light Co.,
"By Chas. Offutt, *Its Attorney.*"

The findings of the court, its conclusions of law, and the relief granted by the final decree, were as follows:

"1. On the 1st day of February, 1890, the defendant entered into a contract with the firm of Markel & Swobe, a copartnership, as set forth in plaintiff's petition.

"2. Said contract was for a term of five years from February 1, 1890, with the option of Markel & Swobe to stop its operation at their election at the end of any year before the end of said term.

"3. Jacob Markel, being the Markel of said Markel & Swobe, before the commencement of this suit, and in April, 1891, assigned to the plaintiff herein all his rights in said firm and the contract with said defendant.

"4. By the terms of said contract, the defendant agreed to sufficiently light said hotel for said Markel & Swobe

with five arc and five hundred and thirty-seven sixteen candle power lamps in a complete and satisfactory manner, or not to exceed six hundred and twelve such lights, and that for said light said Markel & Swobe agreed to pay said electric light company the sum of $375 per month as rent therefor, payable at the end of each and every month.

"5. That at the commencement of this suit and for a long time prior thereto the defendant had furnished five arc and five hundred and thirty-four incandescent lights; that the plaintiff claims said lights were not sufficient and did not light said hotel in a complete and satisfactory manner, and that the plaintiff, before the commencement of this suit, had repeatedly demanded that the said defendant furnish additional incandescent lights as specified in the contract, and that defendant refused to do so.

"6. That prior to the institution of this action, to-wit, March 17, 1891, the firm of Markel & Swobe had a settlement with the defendant of the defendant's account and the statement thereof, when it was agreed by and between the defendant and Markel & Swobe that the amount due and unpaid by the said Markel & Swobe under said contract up to March 1, 1891, was $2,073.50; that of this amount $573.50 was paid at or about the time of said settlement; that the defendant on or about the first day of April, 1891, presented a bill to the plaintiff for $2,225,. $350 thereof being for concealed wiring and $375 for lights for the month of March, 1891, $1,500 being the balance due on said settlement; that at the time said bill was presented the plaintiff refused the same, assigning as a reason that the $350 was included in the settlement had on the 17th day of March, 1891.

"7. That no part of the remainder due on said settlement of March 17, 1891, to-wit, $1,500, and no part of the rent for March, 1891, was paid before the institution of this suit.

"8. That at the time of the final hearing herein all bills

for monthly lighting had been paid by the plaintiff, and
that on the date of the hearing of the application for
the injunction herein the said plaintiff paid the sum of
$1,799.16 thereof to defendant in open court.

"9. That just prior to April 22, 1891, said Markel, of
the firm of Markel & Swobe, declined to pay the bill of
the defendant when the same was presented, on the ground
that he had sold out to the plaintiff Swobe and had noth-
ing more to do with the contract of February 1, 1890.

"10. Said Markel & Swobe, in said contract of Feb-
ruary 1, 1890, agreed that they would use the lights only
when required, the same as gas had been used theretofore
in said premises.

"And thereupon the court concludes, as a matter of law,
that the interest of said Jacob E. Markel in said contract
of February 1, 1890, was assignable to this plaintiff, and
that the plaintiff is now entitled to prosecute this action in
his own name and to have the lights furnished by the said
defendant under said contract until the expiration of said
five years, at his election, in like manner as the said defend-
ant contracted to furnish them to said Markel & Swobe;
and it is thereupon ordered and adjudged that the tempo-
rary injunction granted herein be, and the same is hereby,
made perpetual, and that the said defendant, its servants,
officers, agents, and employes be, and they are hereby, en-
joined from in any way interfering with the electric lights,
wires, and machinery now in said Millard Hotel, in the city
of Omaha, Douglas county, Nebraska; provided, however,
and this injunction is granted upon the express condition,
that the said plaintiff shall pay to said defendant, until the
end of said contract, the sum of $375 on the first day of
each and every month as rent for said lights, on the pre-
sentation by the defendant of its bill therefor at the Mill-
ard Hotel office in the city of Omaha.

"In entering this decree the court does not determine or
consider the character or sufficiency of the lights furnished

by defendant, nor undertake to prejudice or estop the plaintiff from prosecuting an action at law for the recovery of the damages, if any, which he may sustain by reason of the failure of the defendant to furnish the lights as contracted for."

Each of the findings of fact is sustained by sufficient evidence to render unnecessary any review thereof with the view of determining the contentions in that direction.

The appellant insists that the contract between appellant and the firm of Markel & Swobe was not assignable. This might be conceded, and yet it would advance but little the inquiry properly arising upon said contract in respect of the relations, rights, and remedies of appellee. The firm of Markel & Swobe was originally one of the parties to the contract under consideration; and the question is not whether or not by virtue of the assignment another party might be substituted, but one member of said firm having retired therefrom and assigned his interest and rights thereunder to his partner, whether or not such partner's entire rights under the contract are extinguished by virtue of said assignment. If the assignment had been by Markel & Swobe to a stranger, it might be insisted, with some degree of plausibility, that a credit was extorted from appellant in favor of a person to whom the appellant might not wish to extend such credit. In the case under consideration, this element has no place. The credit was voluntarily extended to Markel & Swobe. No assignment as between the parties composing said firm could release or even modify the liability of each of the partners of that firm for the indebtedness of the firm, unless assent was given thereto by appellant. It is urged, however, that the contract provided that the firm of Markel & Swobe should use the electric lights only when required, the same as gas had been used on the same premises before the contract was entered into. What was the remedy which the appellant could, resort to if more lights were used than required?

Obviously, it was not in contemplation by either party that upon the use of an unnecessary amount of electric light the company should have the right to deny the hotel the use of any electric light whatsoever. Its remedy, then, was an action on account of such unnecessary use of light as against Markel & Swobe, a right of action in no way abridged by the retirement from that firm of one of its individual members. But it is said that by the terms of the contract it continued from month to month, determinable at the option of either party. The contract, by its terms, required the electric light company to furnish the money for plain work and labor, for which the firm of Markel & Swobe were to make payments as follows: "If the lights were discontinued at the end of the first year, the sum of $468, or $\frac{1}{5}$ off; at the end of the second year, $351, or $\frac{2}{5}$ off; at the end of the third year, $234, or $\frac{3}{5}$ off; at the end of the fourth year, $117, or $\frac{4}{5}$ off; at the end of the fifth year said Markel & Swobe shall pay nothing." The oral evidence as to why these terms were fixed upon tends to show that the difficulty of coming to a common understanding was found in this item of $585, for the appellant declined to wait for this amount, while the firm of Markel & Swobe insisted that if by that firm it was paid in advance the amount would be a total loss in case it was found that the lights were unsatisfactory. It is shown that at the time the contract was entered into the appellant was desirous that the Millard Hotel management should adopt the use of the company's electric lights, and a compromise was agreed upon, its terms being expressed in the language above quoted. The evidence, including the terms of the contract itself, fully justified the court's second finding of fact, that the contract contemplated the term of five years, the firm of Markel & Swobe having the sole option to terminate it within that time. Appellant insists, however, that this option was exercised when Markel retired from the firm of Markel & Swobe, for, says appellant's counsel in his

brief, "there could be no better evidence of the exercise of this option to discontinue than Markel's withdrawal from the firm and his refusal to pay the rents, saying that he had nothing further to do with the hotel business." The language thus attributed to Markel is paraphrased by appellant's counsel as follows: "Here, in words not to be mistaken, he [Markel] gave the defendant [the appellant] notice that, so far as he was concerned, the lights were not needed and were not to be furnished." If the statement of Markel was fairly susceptible of the construction given it in the use of the words, "and were not to be furnished," there would be force in appellant's argument, for it might amount to a rescission of the contract and the repudiation of all rights and liabilities under it; but it is in just this respect that appellant's contention fails, for Markel never was released from liability for the performance of the terms agreed to by Markel & Swobe, either by his refusal to perform or otherwise, so far as the evidence discloses. The proposition to enter into a new contract with appellee, which is found at the close of appellant's notice, though addressed to Markel & Swobe, clearly indicates that there is, in reality, no objection to Mr. Swobe himself, nor to his ability to perform the undertakings in the existing contract. A notice of rescission by one party because of an objection to the financial ability of the other to pay what has already been undertaken, is, to say the least, somewhat inconsistent with a contemporaneous proposition to renew such undertakings upon terms which require still greater financial ability of the party notified. The judgment of the district court is right and is

AFFIRMED.